UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

CORPORATE COMMUNICATION
SERVICES OF DAYTON, LLC,

    Plaintiff,

-v-

MCI COMMUNICATIONS
SERVICES, INC.
D/B/A VERIZON BUSINESS SERVICES,

    Defendant.

Case No. 3:08-CV-046

Judge Thomas M. Rose

---

**ENTRY AND ORDER GRANTING MCI'S FIRST MOTION IN LIMINE (Doc. #64) AND OVERRULING MCI'S SECOND MOTION IN LIMINE (Doc. #70)**

---

  This matter arises from a business relationship between Plaintiff Corporate Communication Services of Dayton, LLC ("CCS") and Defendant MCI Communications Services, Inc. d/b/a Verizon Business Services ("MCI").

  CCS's initial Complaint was filed in the Court of Common Pleas of Montgomery County, Ohio on January 14, 2008, and was subsequently removed to this Court on February 19, 2008 (doc. #1). On April 20, 2009, CCS, with leave of Court, filed an Amended Complaint. (Doc. #14.) It is CCS's Amended Complaint that is now before the Court.

  CCS's Amended Complaint brings eight Claims for Relief against MCI. (Doc. #14.) CCS's First Claim for Relief is for breach of contract. The Second Claim for Relief is for fraudulent inducement and the Third Claim for Relief is for negligent misrepresentation. CCS's Fourth Claim for Relief is for mistake and its Fifth Claim for Relief is for violation of Ohio Rev. Code § 1335.11. The Sixth Claim for Relief is for unjust enrichment, the Seventh is for

promissory estoppel and the Eighth is for unconscionability, reformation and recision. MCI has asserted a counterclaim for attorneys' fees on CCS's Fifth Claim for Relief for violation of Ohio Rev. Code § 1335.11.

The original discovery deadline was February 20, 2009. (Doc. #8.) At CCS's request, this deadline was extended to June 5, 2009. (Doc. #10.) On June 16, 2009, Motions for Summary Judgment were filed by both Parties. (Docs. #25, 26.) Following resolution of several issues regarding CCS's Motion for Partial Summary Judgment, the Court issued its Entry and Order regarding the summary judgment motions on November 9, 2009.

The Court determined that MCI did not breach the VAR or the SPA with regard to the 409 Group accounts. As a result, MCI owes no commissions to CCS on the 409 Group accounts. (Doc. #68.) The Court did find genuine issues of material fact regarding whether MCI breached the SPA regarding commission payments to CCS on the Henny Penny and other accounts. (Id.) CCS's remaining claims were dismissed except for their claim and MCI's counterclaim regarding commissions brought pursuant to Ohio Rev. Code §1335.11.

A Final Pretrial Conference was conducted on November 13, 2009. Subsequently, the trial date of December 7, 2009, was vacated by the Court due to pending and not fully briefed Motions In Limine. (Doc. #71.)

The Motions In Limine are now fully briefed and ripe for decision. The relevant legal provisions for motions in limine will first be set forth followed by an analysis of the Motions.

**RELEVANT LEGAL PROVISIONS**

The practice of ruling on motions in limine, although not specifically authorized by the Federal Rules of Evidence or the Federal Rules of Civil Procedure, has developed pursuant to the

district court's inherent authority to manage the conduct of trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The purpose of a motion in limine is to permit the Court to decide evidentiary issues in advance of trial in order to avoid delay and ensure an evenhanded and expeditious trial. *See Indiana Insurance Co. v. General Electric Co.*, 326 F. Supp.2d 844, 846 (N.D. Ohio 2004)(citing *Jonasson v. Lutheran Child and Family Services*, 115 F.3d 436, 440 (7th Cir. 1997)). Decisions on motions in limine may also save the parties time and cost in preparing for trial and presenting their cases.

Evidence is generally admissible if it is relevant and not unfairly prejudicial. *Reed v. National Linen Service*, No. 97-5545, 1999 WL 407463 at *7 (6th Cir. June 2, 1999). However, because it is almost always better situated during the actual trial to assess the value and utility of evidence, a court is reluctant to grant broad exclusions of evidence in limine. *Koch v. Koch Industries, Inc.*, 2 F. Supp.2d 1385, 1388 (D. Kan. 1998), *aff'd in part and rev'd in part on other grounds*, 203 F.3d 1202 (10th Cir. 2000), *cert. denied*, 531 U.S. 926 (2000). A court will generally not grant a motion in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible. *Indiana Insurance*, 326 F. Supp.2d at 846. If this showing is not made, evidentiary rulings should be deferred and resolved in the context of the trial. *Id.*

Ultimately, whether a motion in limine is granted or overruled is a matter left to the sound discretion of the trial court. *See Hesling v. CSX Transportation, Inc.*, 396 F.3d 632, 643-44 (5th Cir. 2005). Each of the pending motions in limine will next be addressed keeping in mind that the overruling of a motion in limine at this stage in the proceedings does not necessarily mean that the subject evidence will be admissible in the context of the trial.

**MCI's MOTION IN LIMINE**

In its first Motion In Limine, MCI argues that Jerry J. Jalaba ("Jalaba") should not be permitted to testify at trial because his opinions are irrelevant. Jalaba is an expert witness designated by CCS who timely provided an expert report to MCI on March 31, 2009. CCS argues that Jalaba should be permitted to testify because he is qualified, because his testimony is relevant to damages and because his testimony is relevant to industry standards, practices, customs and norms.

Jalaba's report summarizes his conclusions regarding the VAR and SPA agreements between CCS and MCI. Any testimony that he would offer about industry standards regarding the VAR and SPA agreements would be irrelevant because the agreements would govern and the Court has found them to be enforceable agreements.

He offers damage testimony regarding only commissions on the 409 Group account. This too would be irrelevant because the Court has determined that MCI owes no commissions on the 409 Group accounts.

In sum, based upon the expert report that he has submitted, Jalaba has no evidence relevant to the issues that remain to be tried. As a result, his testimony is inadmissible. Therefore, MCI's Motion In Limine (doc. #64) is GRANTED.

**MCI'S SECOND MOTION IN LIMINE**

In its Second Motion In Limine, MCI argues that CCS should be precluded from offering any evidence or contending at trial that MCI owes CCS any commissions for services or equipment provided to Corsp, Dyna, Hobart/PMI/ITW, Liberty Steel, Lute Supply, Unverferth/HCF/ICP or Victory Wholesale Grocers because there is no allegation in the

Amended Complaint that MCI breached either the VAR or the SP Agreements for any account other than CNG and Henny Penny. (Doc. #70.) CCS responds that sufficient notice has been provided in the Amended Complaint and otherwise.

The Court agrees that sufficient notice has been provided in the Amended Complaint. Paragraph 23 of the Amended Complaint provides, in part, that, "[a]s a result of CCS not meeting this $25,000 commission 'evergreen' minimum, CCS has also not been paid commissions on revenues generated from other accounts placed by CCS…." Paragraph 26 provides, in part, that, "MCI has also refused to pay additional commissions due to CCS from other accounts, based on the reduction in overall commissions resulting from the refusal of MCI to pay the Henny Penny commissions." Paragraph 42 provides, in part, that, "[i]n breach of the agreements between MCI and CCS, MCI has refused to pay CCS commissions owed to CCS on the CNG account and other accounts." Paragraph 43 provides, in part, "MCI has refused to pay CCS commissions owed on the Henny Penny account and other accounts."

MCI continued to be aware of CCS's request for commissions beyond those provided by CNG in the Amended Complaint as the case progressed. For example, at the Deposition of Cheryl Reiter, MCI produced a list of accounts and revenues showing that the revenues on CCS accounts were meeting the "evergreen" threshold at least through July, 2008, but July commission payments were "Withheld per September 2008 letter from John Devine." (Deposition of Cheryl Reiter ("Reiter Dep.") Ex. 134 May 20, 2009.) Reiter testified that the commissions were stopped because "there were conversations around a settlement and that came out of those conversations." (Reiter Dep. 124.)

On June 1, 2009, Matthew Hippenmeyer ("Hippenmeyer") was asked by MCI's counsel

about commissions on the Liberty Steel, Dyna Electric, Henny Penny, ITW/Hobart, Unverferth, ICP and HCF accounts. (Deposition of Matthew Hippenmeyer ("Hippenmeyer Dep.") 253-55 June 1, 2009.) Hippenmeyer supplemented his deposition testimony with an Affidavit dated May 15, 2009. Therein he indicates that, "When the SPA was terminated, CCS was receiving commissions on the following accounts: CNG, Henny Penny, ITW/Hobart, Unverferth, Dyna, Liberty Street, Lute and VWG. In July 2008, MCI stopped paying any commissions on all accounts. Based upon commission statements provided by MCI, the monthly average Total Customer Revenue was over $76,000, excluding CNG revenues, when MCI stopped paying commissions. MCI has never provided CCS with a statement indicating Total Customer Revenue has been less than $25,000 in any month." Finally, in an Entry and Order docketed on November 9, 2009, this Court found that, "[t]here are genuine issues of material fact and neither party is entitled to judgment as a matter of law on the claim that MCI has breached the SPA with regard to payment of residual commissions on accounts, other than the CNG account." (Doc. #68 p.28.)

Thus sufficient and continuing notice has been provided. MCI's Second Motion In Limine is OVERRULED. But, there is more.

CCS now seeks additional discovery of the revenues of other CCS accounts to ascertain if and for how long the "evergreen" amount was satisfied. At the Final Pretrial Conference, CCS alleged, for the first time, that MCI has been asked and has not produced the requested information regarding revenue from other CCS accounts.

However, CCS cannot have it both ways. If, as CCS argues, MCI was on notice that CCS was claiming commissions, then surely CCS was on notice thereof.

The once-extended discovery deadline was June 5, 2009. No mention by CCS of the

failure of MCI to respond to previous discovery requests or of the lack of discovery on the other commissions was made until the Final Pretrial Conference held on November 10, 2009. And no acceptable reason has been given as to why discovery was not completed by the deadline.

The Court finds no acceptable reason to conduct further discovery. The only matter that remains is the Trial. The Court will soon be contacting the Parties to set a date for the submission of an amended Proposed Final Pretrial Order, for another Final Pretrial Conference and for Trial.

**DONE** and **ORDERED** in Dayton, Ohio this Third day of December, 2009.

                                                    **s/Thomas M. Rose**
                                              _____
                                                  THOMAS M. ROSE
                                      UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record